UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| STEPHEN DARK, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:17-CV-225 |
| THE SALVATION ARMY CHATTANOOGA, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court to address defendant, The Salvation Army's[1] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 36]. The Salvation Army seeks to dismiss the amended complaint filed by plaintiff Stephen Dark ("Mr. Dark"). [Doc. 35]. Mr. Dark responded, [Doc. 40], and The Salvation Army replied. [Doc. 43]. The matter is now ripe for review.

### I. FACTUAL BACKGROUND

This matter was initiated by the filing of the plaintiff's original complaint, [Doc. 1], on August 15, 2017. The Salvation Army responded by filing a motion to dismiss on October 11, 2017, [Doc. 10]. Plaintiff filed a motion to amend the complaint, [Doc. 20], which was granted by the magistrate judge on February 14, 2018. [Doc. 32]. This Court denied the original motion to dismiss, [Doc. 10], as moot, as it was filed in relation to the original complaint. Plaintiff filed an amended complaint on February 20, 2018, [Doc. 35], which defendant now seeks to have dismissed.

---

[1] Plaintiff incorrectly identified the defendant as "The Salvation Army Chattanooga." [*See* Doc. 35].

Mr. Dark was employed by The Salvation Army in Chattanooga as the Director of Community Programs for a period of eighteen (18) years. [*Id.* at 4]. For the first fifteen years of his employment with The Salvation Army, Mr. Dark's employment record was largely unblemished. [*Id.* at 4]. Sometime in May 2012, The Salvation Army recruited Captain Robert Viera to the ministerial staff. [*Id.* at 5]. Captain Viera consequently became Mr. Dark's supervisor. [*Id.*]. During the 2012 Christmas Red Kettle season, Captain Viera drew and aimed a gun at Mr. Dark in the East Lake Community Center. [*Id.* at 6]. Mr. Dark did not report the incident to Human Resources immediately. [*Id.* at 7]. Captain Viera was never subject to disciplinary action for his conduct in the incident. [*Id.* at 6]. Weeks later, Captain Viera aimed a gun at another African American employee, Lisa Finley. [*Id.* at 7].

Sometime in 2013, corporate office personnel rejected Captain Viera's first performance evaluation of Mr. Dark because it was uncharacteristic in light of Mr. Dark's employment history. [*Id.* at 8]. Local Human Resources advised Mr. Dark that they rejected Captain Viera's 2013 evaluation because "[t]hey wanted to make sure [the defendant] was being treated fairly." [*Id.*]. In June 2013, Captain Viera ordered Mr. Dark to paint a thirty to forty foot tall gym corridor in three or fewer days – under threat of written warning – without assistance. [*Id.* at 8-9]. Captain Viera also ordered Mr. Dark to move two slate pool tables and various weight training equipment to the basement, again allotting minimal time for completion. [*Id.* at 9].

During the 2013 Christmas Red Kettle season, Mr. Dark learned that Captain Viera planned to carry a gun again. [*Id.*]. Mr. Dark began experiencing night terrors and difficulty sleeping. [*Id.*]. In February 2014, Mr. Dark reported Captain Viera's negative attitude toward him to local Human Resources. [*Id.* at 10]. An investigator from the National Office interviewed Mr. Dark and his co-workers about harassment. [*Id.*]. Human Resources advised Mr. Dark that they would

follow up in two weeks, but a follow-up never occurred. [*Id*.]. In June or July 2015, Lieutenant Cancina replaced Captain Viera – who transferred to a new location within The Salvation Army – as Mr. Dark's supervisor. [*Id*. at 11]. Lieutenant Cancina, in her first week, issued a written warning against Mr. Dark for taking excessive leave; the leave in question consisted of pre-approved vacation days. [*Id*.].

During October 2015, Mr. Dark began seeing a therapist to address his difficulty sleeping and continued night terrors. [*Id*.]. Consequently, the therapist diagnosed Mr. Dark with Post-Traumatic Stress Disorder ("PTSD"). [*Id*.]. Mr. Dark contacted his employer in November 2015, requesting leave under the Family and Medical Leave Act ("FMLA") due to his diagnosis. [*Id*.]. On November 11, 2015, The Salvation Army eliminated the Director of Community Programs position and consequently terminated Mr. Dark's employment. [*Id*. at 12]. On March 12, 2016, Mr. Dark filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 37 at 4]. In the Charge, Mr. Dark alleged he was discriminated and retaliated against because of his disability. [*Id*.]. On the accompanying intake questionnaire, Mr. Dark checked "disability" and "retaliation" boxes and claimed the dates of discrimination took place from November 6-11, 2015. [*Id*.]. Mr. Dark claims that he received a right to sue letter from the EEOC and timely initiated this proceeding.[2] [*See* Doc. 35 at 15].

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

---

[2] Plaintiff alleges that the EEOC issued a "Notice of Right to Sue" Letter on May 16, 2017 – postmarked May 16, 2016. [Doc. 35 at 15]. Nowhere does the plaintiff indicate a date of receipt. [*See id.*].

3

motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990).

The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Moreover, this Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 556 U.S. at 678. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### III. ANALYSIS

Plaintiff's amended complaint lists the following claims: "Title IV Harassment — Based on Race," "Title IV Retaliation," "ADA Retaliation," and "Constructive Discharge." [Doc. 35 at 12-15]. The Court, unable to "extract neither the causes of action, nor the legal arguments, the plaintiff intended to advance," ordered the plaintiff to file a plain statement of the causes of action he intended to advance, the elements of those claims, and the facts in the Amended Complaint

which support said claims. [Doc. 44 at 1-2]. The plaintiff clarifies in his Amended "Memmorandum" of Points and Authorities, [Doc. 47], that he intends to press forward with Title VII Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, race-based hostile work environment and retaliation claims. [Doc. 47 at 2]. Plaintiff also identifies hostile work environment, retaliation, and constructive discharge claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* [*Id.*]. The plaintiff's Amended "Memmorandum" fails, however, to heed the menial instructions constituting this Court's prior order. [*See* Doc. 44 at 2]. Plaintiff's Amended "Memmorandum" is thirteen (13) pages long and — again — unacceptably riddled with errors.[3] Likewise, the Court identifies *at least* two[4] material misrepresentations of fact or law in the Amended "Memmorandum," [Doc. 47].[5] Plaintiff's counsel altogether fails to enumerate the elements of each claim, as ordered by the Court. In the absence of the elements of each claim, the plaintiff also contravened the Court's order to reference specific factual allegations in the Amended Complaint, [Doc. 35], which support the causes of action pursued. Despite the complete failure by Plaintiff's counsel to follow the instructions enumerated in the Court's Memorandum Opinion and Order, [Doc. 44], or provide citations compliant with the Local Rules, the Court will analyze and decide the issues on the merits.

---

[3] The Court ordered the plaintiff's response to be no longer than five (5) pages in length. [*See* Doc. 44 at 2]. Furthermore, the Court finds no fewer than twenty-eight (28) citation errors in the plaintiff's Amended "Memmorandum," [Doc. 47], after extensively expressing its dissatisfaction with the plaintiff's stricken "Memmorandum" in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, [Doc. 41], which contained at least forty-five (45) citation errors. [*See* Doc. 44 at 1]. Again, this Court emphasizes: "[t]he Court will **not** consider improperly cited authority." E.D. Tenn. L.R. 7.4.

[4] Plaintiff's Amended "Memmorandum," [Doc. 47], states that Plaintiff's co-worker, Solita "Lisa" Finley "provides in her Affidavit that Captain Robert Viera . . . used derogatory remarks in reference to African Americans in the East Lake Community." [Doc. 47 at 3]. Nowhere in Ms. Finley's affidavit does she state or imply anything akin to this. [*See* Doc. 47-2]. The Amended "Memmorandum," [Doc. 47], suggests "[t]he fact that his only known targets are of the same race . . . raises a plausible right to relief based on race," crediting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007) as directly stating the proposition. The plaintiff's assertion is unequivocally unrelated to the underlying — or any other — proposition in *Twombly*, 550 U.S. 544 (2007).

[5] The Court reiterates that knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to a tribunal is a violation of counsel's Duty of Candor toward the Tribunal.

5

### a. Title VII Race Discrimination Claims

The plaintiff, in the Amended Complaint, [Doc. 35], brings claims for "Title IV Harassment – Based on Race," and "Title IV Retaliation." [*Id*. at 13-14]. The Court arrives at the conclusion that the plaintiff intends to raise these claims under Title VII after examination of the plaintiff's Amended "Memmorandum," [Doc. 47].[6] The Court shall address both of these claims in this section.

The plaintiff claims he is entitled to relief under Title VII for race-related discrimination because the defendant "and its agents, namely Supervisor Robert Viera, engaged in a pattern and practice of intimidation so severe and pervasive as to constitute a hostile work environment." [Doc. 35 at 13]. Plaintiff points to Captain Viera's performance review of the plaintiff, which was so poor that "Defendant's Corporate Office rejected the evaluation and flagged [it] for internal review."[7] [*Id*.]. The plaintiff's most critical reference, it appears, is the "Red Kettle season" gun incident involving Captain Viera (Hispanic) and Plaintiff (African American) — as well as a second gun incident involving Captain Viera and African American co-worker Solita "Lisa" Finley. [*Id*.]. The plaintiff also references Captain Viera's demands that he (Mr. Dark) perform "manual labor and heavy lifting and skilled labor," activities beyond the description of his position. [*Id*.]. Plaintiff states that it is "undisputed that Captain Robert Viera is only known to target African Americans." [Doc. 47 at 5]. The defendant argues that Mr. Dark has not exhausted his administrative remedies through the EEOC and, consequently, dismissal is proper for his race-related claims. [Doc. 37 at 2].

The plaintiff claims that he is entitled to relief for retaliation under Title VII because he participated in a protected activity — by participating in an internal investigation of Captain Viera.

---

[6] *See infra* note 11.
[7] See *supra* pp. 1-3 for an extensive overview of the facts.

[Doc. 35 at 14]. The plaintiff further claims that "but for the causal link between employer's knowledge of his participation in protective activity, he would not have been singled out for a written warning by his new supervisor for taking approved leave." [*Id.*]. The defendant counters that dismissal of all of plaintiff's race-related claims is necessary due to failure to exhaust administrative remedies before the EEOC. [Doc. 37 at 2]. Specifically, the defendant argues that because the plaintiff's EEOC charge never mentioned race, nor checked the race box, the only retaliation claim which would be reasonably noticed by the EEOC is disability-related. [*Id.* at 2, 6].

It is undisputed by the plaintiff that "[a]s a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies." *Scott v. Eastman Chem. Co.*, 275 Fed. Appx. 466, 470 (6th Cir. 2008) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002)). Nor does the plaintiff dispute the exhaustion requirement mandated by statute. Exhaustion under Title VII requires filing a Charge of Discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice . . . including the date, place and circumstances of the alleged unlawful employment practice . . . ." 42 U.S.C. § 2000e-5(e)(1). The plaintiff did in fact file a charge with the EEOC, a fact undisputed by the defendant. Likewise, the plaintiff asserts — and the defendant does not dispute — that he received a Right to Sue Letter from the EEOC and brought this suit in the timeframe permitted by said letter.[8] Review of the EEOC charge indicates that plaintiff did not check the "race" discrimination box, nor mention the race of any of the parties involved in the alleged race discrimination. [*See* Doc. 37-1].

---

[8] The plaintiff's Amended Complaint suggests that he attached the letter to the original Complaint, [Doc. 1]. [*See* Doc. 35 at 15]. The Court has ascertained that the plaintiff did not attach the letter to the original Complaint, [Doc. 1], and therefore cannot determine that the plaintiff filed this suit timely, but will treat the assertion as true.

Plaintiff argues that his failure to articulate race on the EEOC charge, specifically, as a basis for Title VII claims, is not an absolute bar justifying dismissal. [Doc. 46 at 6]. Plaintiff is correct in this regard,[9] though the circumstances under which his Title VII claims can go forward are scarce. "[T]he judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991), *abrogated on other grounds as recognized by Hill v. Nicholson*, 383 Fed. Appx. 503 (6th Cir. 2010)). Alternatively, the exhaustion requirement is satisfied if the relevant agency discovers evidence of the discrimination underlying the uncharged claim during their investigation into the plaintiff's charge. *Johnson v. Cleveland City Sch. Dist.*, 344 Fed. Appx. 104, 109 (6th Cir. 2009) (citing *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)). Additionally, the Court must liberally construe the EEOC charge because counsel did not aid the plaintiff. *Ang*, 932 F.2d at 546.

Determining which claims are properly raised in an EEOC charge goes beyond an analysis of which boxes are checked by the complainant. "[T]he facts alleged in the EEOC charge . . . rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge." *Bray v. Palm Beach Co.*, No. 89-6171, 1990 WL 92672, at *2 (6th Cir. Jun. 29, 1990). Here, however, the plaintiff's factual allegation portion of his EEOC charge mentions neither his own race, nor the race of anyone else. Therefore, even if the plaintiff had checked the "race" box, the lack of *any* mention of race in his factual allegations was not sufficient to notice

---

[9] All of the plaintiff's citations informing this point are incorrect. The Court explicitly addressed the plaintiff's extensive citation errors in a past filing (*supra* note 3), but the pervasiveness of the errors cannot be understated. The Court — again — reiterates that improper citations will not be considered. *See* E.D. Tenn. L.R. 7.4.

the EEOC. Liberally construing plaintiff's EEOC charge, the Court cannot identify any information that would have sufficiently notified the EEOC of the plaintiff's race discrimination claims to investigate or conciliate with the defendant on those grounds.

The Court is unconvinced that a racial discrimination charge reasonably grows out of a disability discrimination investigation solely on the fact that Mr. Dark is African American and Captain Viera is Hispanic — a fact entirely unmentioned in the EEOC charge. *Cf. Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 464 (6th Cir. 1998) (holding that where plaintiff, who indicated her date of birth in the EEOC charge, but related no facts in the charge — describing "race" and "other" charges — which would prompt an age discrimination investigation, and where an age discrimination claim did not in fact grow out of the investigation, the uncharged age discrimination claim was barred); *cf. Ang*, 932 F.2d at 546-47 (where the EEOC charge did not refer to retaliation in the factual statement and the employee did not check the retaliation box, the claim was outside the scope of the EEOC charge and therefore barred) *abrogated on other grounds as recognized by recognized by Hill v. Nicholson*, 383 Fed. Appx. 503 (6th Cir. 2010); *cf. Pearison v. Pinkertons, Inc.*, No. 1:02-CV-142, 2002 WL 32060142, at *4-5 (E.D. Tenn. Sept. 16, 2002) (plaintiff who had not presented factual allegations which would prompt the EEOC to investigate an unrelated charge raised for the first time in the judicial complaint did not satisfy the scope of investigation test); *cf. Reynolds v. Solectron Global Servs.*, 358 F. Supp. 2d 688, 692 (W.D. Tenn. 2005) (race discrimination claim could not reasonably be expected to grow out of a sex discrimination charge).

The plaintiff did not exhaust his administrative remedies before alleging racial discrimination in his judicial complaint. Consequently, the Court does not have subject matter jurisdiction to hear plaintiff's Title VII, 42 U.S.C. § 2000e, *et seq.*, race-related discrimination

claims. The Title VII claims for race-based discrimination — specifically hostile work environment and retaliation — are therefore **DISMISSED WITH PREJUDICE**.[10]

   **b. ADA Hostile Work Environment**

Plaintiff argues that he is entitled to relief pertaining to his ADA hostile work environment claim because the "disability claims are directly linked to his hostile work environment. Even with a change in supervisors, the harassment did not stop." [Doc. 47 at 4].[11] Plaintiff extrapolates this claim from the fact that his PTSD diagnosis relates to the gun incident with Captain Viera.[12] "Both claims arise out a shared set of facts and are derived from unchecked supervisor acts of aggression and hostility based on race." [Doc. 47 at 4]. The defendant argues that Plaintiff failed to make a single allegation that he was harassed because of his disability. [Doc. 37 at 8]. In support, the defendant references the absence of an ADA hostile work environment claim from the Amended Complaint, [Doc. 35], and that "[t]he only harassing conduct asserted in the Amended Complaint was carried out by Captain Viera prior to Plaintiff's PTSD diagnosis, and Plaintiff never alleges that he disclosed his purported disability to Captain Viera." [Doc. 37 at 8].

In order to maintain an action for hostile work environment under the ADA, the plaintiff must demonstrate that (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) the defendant is vicariously liable for the harassment. *Trepka v. Bd. of Educ.*, 28 Fed. Appx. 455, 461 (6th Cir. 2002). The plaintiff's Amended Complaint states that his therapist entered a diagnosis of PTSD in October 2015. [Doc. 35 at 11]. However, the Amended Complaint,

---

[10] If the Court were to dismiss without prejudice, the plaintiff would remain effectively barred from refiling because the plaintiff cannot file a new, race-based EEOC charge as the incidents of alleged racial discrimination are beyond the statutorily defined period of 180 or 300 days. 42 U.S.C. § 2000e-5(e)(1).

[11] The Court is not obligated to consider the allegations contained in the "Amended Memmorandum of Points and Authorities," [Doc. 47], but does so in spite of the insubordinate nature of said "Memmorandum." *See supra* notes 3-5 and accompanying text.

[12] *See supra* note 7.

[Doc. 35], does not allege a single allegation of harassment occurring after his diagnosis. The plaintiff references the harassing conduct of his supervisors numerous times in support of his ADA hostile work environment claim, but offers no evidence of an incident occurring after the PTSD diagnosis (the time at which the plaintiff can claim to be disabled under the ADA) but before his discharge. [*See generally* Docs. 35, 46]. The purpose of the hostile work environment cause of action, evident in its clear and straightforward language, is to provide recourse for discrimination *based upon* some identifying characteristic — here, disability. However, alleging facts and asserting arguments in the manner the plaintiff has here is indicative of a fundamental misunderstanding of the law. The facts alleged by the plaintiff to support the hostile work environment claim suggest the plaintiff is arguing that the cause of action should provide recourse for discrimination *resulting in* disability. The plaintiff makes no attempt to respond to the straightforward "based on" language from the Sixth Circuit in *Trepka*, 28 Fed. Appx. at 461.[13] For the reasons discussed above, the plaintiff has not pleaded sufficient facts to support an "ADA" hostile work environment claim. Consequently, plaintiff's "ADA" hostile work environment claim is **DISMISSED WITH PREJUDICE**.

    c. **ADA Retaliation**

The plaintiff, in his Amended Complaint, [Doc. 35], alleges the defendant retaliated against him for asserting his right to family medical leave, in violation of the ADA, 42 U.S.C. § 12203(a). [Doc. 35 at 14]. In support of his claim, the plaintiff identifies — solely — the fact that the defendant discharged him a mere five days after requesting FMLA. [Doc. 47 at 12].[14] The Amended Complaint alleges that "Employer know[15] of protected activity and Plaintiff suffered an

---

[13] *See* discussion *supra* pp. 10-11.

[14] Plaintiff's counsel bounces between constructive discharge in the Amended Complaint, [Doc. 35 at 14], and— presumably— actual discharge in the Amended "Memmorandum," [Doc. 47 at 12]. *See supra* note 11.

[15] The Court has drawn attention to many syntactic errors committed by Plaintiff's counsel to illustrate more completely the poor quality of the work submitted into the record. Although the Court has not weighed

adverse employment action after asserting his right to FMLA. Inthat [sic] he was constructively discharged." [Doc. 35 at 14]. In response, the defendant argues that the plaintiff did not engage in protected activity and is therefore not entitled to relief. Specifically, the defendant advances the Seventh Circuit position that a basic request for FMLA leave, without more, is not protected activity under the ADA. [Doc. 37 at 10 (citing *Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 815 (7th Cir. 2015))]. Elaborating on this point, the defendant suggests that, at the time of his termination, the plaintiff did "not allege he made a single complaint regarding discriminatory treatment under the ADA . . . ." [Doc. 37 at 10].

The ADA retaliation statute states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Likewise, establishing a prima facie retaliation case under the ADA requires that the plaintiff prove (1) that he engaged in activity *protected by the ADA*; (2) the defendant knew of Plaintiff's exercise of protected rights; (3) the defendant subsequently took employment action adverse to the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action. *Johnson v. Cleveland City Sch. Dist.*, 344 Fed. Appx. 104, 113 (6th Cir. 2009) (emphasis added) (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009)).

The Court recognizes that the plaintiff did engage in protected activity; however, the activity is not protected *by the ADA*. The ADA protects individuals opposing unlawful discriminatory conduct in some manner: participating in investigations, proceedings, or hearings,

---

syntactic errors in its evaluation of the merits of the case, the Court does consider the full spectrum of errors committed noteworthy.

12

making charges, testifying, etc. *See* 42 U.S.C. § 12203(a). The Amended Complaint simply does not allege anything resembling, even remotely, the activities designated by the statute. Requesting FMLA leave is not opposing unlawful practices, nor engaging in an investigation, nor testifying. The Court, treating all well-pleaded factual allegations as true and in the light most favorable to the plaintiff, finds the FMLA request beyond the scope of the ADA retaliation statute. The plaintiff's claim of retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, is therefore **DISMISSED WITH PREJUDICE**.

### d. Constructive Discharge

The plaintiff claims that he was constructively discharged after asserting his right to FMLA — an accommodation to his disability, PTSD, under the ADA. In support of this claim, the plaintiff states that the "[d]efendant and its agents made Plaintiff's working conditions so intolerable that a reasonable human being could not expect to work in such an environment." [Doc. 35 at 15]. In response, the defendant highlights that Mr. Dark did not quit; the defendant actually discharged Mr. Dark, and an actual discharge is clearly not a constructive discharge. [Doc. 37 at 11].

The United States Supreme Court has characterized the constructive discharge doctrine as: "an employee's *reasonable decision to resign* because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (emphasis added). The employee's free-will resignation is an essential condition of a constructive discharge claim — if the decision is not that of the employee, the discharge is actual rather than constructive and decidedly beyond the scope of the *constructive* discharge doctrine.

The Sixth Circuit echoes this sentiment in its enumeration of the constructive discharge elements. "[A] plaintiff must adduce evidence to show that (1) the employer … deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999)). Mr. Dark's constructive discharge claim is without merit. The Salvation Army *actually* discharged Mr. Dark, which the defendant explicitly acknowledges in his Amended Complaint. [Doc. 35 at 12]. Consequently, the defendant's constructive discharge claim is contrary to his own factual allegations as well as the overwhelming legal authority. The plaintiff has not pleaded facts sufficient to maintain a constructive discharge claim. Accordingly, plaintiff's constructive discharge claim is **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that the defendant's motion to dismiss, [Doc. 36], is **GRANTED**, and all of plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

So ordered

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE